(No. 22326.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN FONTANA *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1934—Rehearing denied June 12, 1934.*

THOMAS J. MCCORMICK, LEONARD C. ROWE, and JAMES C. RENZINO, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

By this writ of error John Fontana, Jack Costello and Sam Franco (hereinafter called defendants) seek a reversal of the judgment of the criminal court of Cook county entered upon the verdict of a jury finding them guilty of burglary. The trial court sentenced each of them to the penitentiary for a term of from one year to life.

Defendants chiefly contend that the evidence was insufficient to sustain the judgment, and that the court erred in admitting burglars' tools in evidence in the absence of any proof connecting defendants with their possession.

Some time during the night of June 27-28, 1933, the creamery office of Ernster Bros. at 2303 West Twenty-second street, in Chicago, was burglarized. An employee named Hahn left the creamery, a one-story building, at 7:00 P. M. on June 27, and upon his return at 1:45 A. M. on June 28 he found a guard-rail for the skylight on the floor, one of the skylight panes broken out, and a plank about fifteen feet long standing against the wall inside the building and under the skylight. One of the office safes had been broken open and $190 removed therefrom. A crow-bar, mallet, hammer, drill and three gloves were found near the damaged safe, the combination of which had been knocked off and its door removed. A radio police message at about midnight on June 27 that there were burglars in the building at 2303 West Twenty-second street caused about ten police officers to quickly assemble there from near by stations. The building was surrounded. All the doors and side windows were found locked, but a noise was heard inside as if someone were rattling or working at a steel door in the rear in an effort to get out. One of the officers went across the street and saw three men on the roof of the creamery, and said they were trying to get on the roof of the adjoining two-story building at 2301. By using a stairway in the building at 2301 officer Quinn reached the level of the roof of the creamery building. He found a window open at the top of the stairway from which there was easy access to the roof of the creamery. One of the defendants, Fontana, was in the hallway at the top of the stairs. He was dirty and covered with perspiration. After arresting Fontana and taking him down to the other officers, Quinn returned, went through the window to the roof of the creamery and discovered the other defendants,

Franco and Costello, on the roof of the building at 2301. They also were dirty and perspiring freely. All three defendants were searched but none of them had a gun or any money. They were taken to the police station by two officers while the remaining eight officers kept the building surrounded for over an hour until the employee, Hahn, arrived at 1:45 and unlocked the door. Upon entering they found no burglars inside, but it was evident from the damaged safe and burglars' tools that the place had been burglarized.

The only evidence connecting defendants with the burglary is circumstantial. Outside of suspicious circumstances surrounding their discovery on the premises adjacent to the scene where a burglary had been committed, no evidence was produced at the trial to show their connection with or participation in the crime. One count in the indictment charged them with breaking and entering and with the theft of $190; the other count charged entering without breaking and with the stealing of money, personal property, etc. There was no evidence of any kind or from any source that they had broken into the premises or had taken any money or property therefrom. No person saw them break in or enter without breaking. No person saw them come out. They were not found inside the building nor in the possession of any of the money or goods stolen nor in the possession of any burglars' tools.

In their own behalf defendants all testified that they were variously employed on June 27, 1933. Fontana, twenty-five, was then working in a bakery; Franco, twenty-three, was a former newsboy but had recently opened and was managing a saloon, and Costello, twenty-five, had been a barber for nine years and worked as usual at his trade on that day. The three young men told similar stories of meeting each other on the evening of June 27 and of going down to the Navy pier in Costello's car about 8:30 P. M. There they met four girls they had not known

before. At about 11:00 o'clock one of the girls said it was getting late and they had to go home. Thereupon Costello volunteered to take them home in his car. The girls said they lived at Twenty-second and Oakley, and as they approached this place the girls suggested that it would be better not to stop right in front of the house as "they did not want the neighbors to see them with fellows." The girls stayed in the car a short time and said they would go up first and for the boys to wait five or ten minutes and then come up, and that one of the girls would find out if it was all right for the boys to come up for some coffee. After waiting a few minutes the boys said they got out of the car and went up the stairway where the girls had gone, at 2301 West Twenty-second street. They said it was dark and they did not see anybody; that they stayed up there a few seconds and then considered they had been "ditched" and started down the stairs; that as they got to the foot of the stairs a police car came and officers jumped out with pistols in their hands; that the boys became frightened at the sight of the police and ran up the stairs; that when they found the window at the top of the stairs, Franco and Costello went out of the window onto the roof of the creamery and then climbed to the roof of 2301. Fontana, being the last one out of the window, fell in some manner and injured his back and was in the hallway when arrested by officer Quinn. All three defendants denied any part in or knowledge of the burglary. They all testified that they had never seen the crow-bar, mallet, hammer, drill, gloves and other exhibits introduced in evidence by the State, and that they had never owned any of these articles or had them in their possession. They also flatly contradicted several statements of the police officers. All three said that it was a hot night and they were dressed lightly, with their shirt sleeves rolled up and no hats or coats on, but all said they had outer shirts on, while two police officers

testified that they were wearing only undershirts, pants, socks and shoes at the time of their arrest. The boys, when asked why they ran at the sight of the police officers, said they did not know why they did so, as they had done no wrong. They made no effort to cover their past lives or business connections, and no evidence was introduced by the State to contradict the fact that all three were working regularly at different trades and had been so working for a number of years preceding the night of their arrest. The record strangely omits any testimony of persons living in the two flats in the second story of 2301. A police officer related that a woman had called to him from an upper window and said two boys were on the roof. The rental agent for the premises testified for defendants that one of the tenants had a wife and three daughters, the oldest around twenty-two, but aside from these scant references no effort was made to disclose the tenancy of the building or for what purposes the apartments were being used.

While this court has repeatedly held that the jury are judges of the facts and the weight of the evidence, yet it has never hesitated to reverse a judgment of conviction in a criminal case where the evidence on which it is based is of an unsatisfactory character or so greatly preponderates in favor of defendant as to raise a serious doubt of his guilt, or where the verdict has resulted from prejudice or passion and was not the result of such calm and deliberate consideration of the evidence as the law requires. (*Keller* v. *People,* 204 Ill. 604; *Cunningham* v. *People,* 210 id. 410; *People* v. *Bolik,* 241 id. 394.) Where a verdict is returned by a jury in a criminal case, or where a similar finding is made by a court where a jury is waived, it is the duty of a reviewing court to carefully consider the evidence, and if it is not sufficient to remove all reasonable doubt of defendant's guilt and to create an abiding conviction that he is guilty the judgment should be re-

versed. (*People* v. *Nemes,* 347 Ill. 268; *People* v. *Abbate,* 349 id. 147.) The evidence in this case is highly unsatisfactory. The few alleged and uncorroborated remarks of an incriminating character attributed to different defendants by the police soon after their arrest were flatly and vehemently denied. One of the defendants testified in court that what one of the police officers had said with reference to an attempted bribe of $600 to "fix" the case was a deliberate lie. This same officer also testified positively that the creamery building was in his district; that he passed it frequently on his beat, and that the door at the entrance to the stairway at 2301 is "just a solid wooden door." In this the officer was shown either to be unobservant or mistaken by the testimony of a real estate agent named Webber, who had maintained his office on the ground floor at 2301 for the past twelve years. Webber had charge of the renting of the building and was frequently up and down the stairway and through the door in question. He testified that this door had a plate-glass window in it on June 27-28, 1933, and that the panel of glass had been in the door since the building was erected.

The story told by defendants of their meeting the girls and taking them home and then losing sight of them is not incredible or improbable. But disregarding this story, the proof fails to establish the guilt of defendants beyond a reasonable doubt. True it is that a burglary was committed on the night in question and on the same night defendants were found on the premises adjacent the creamery. Aside from this proof there is no evidence in the record connecting defendants with the crime. Their car was found about seventy-five feet west of the entrance to the stairway at 2301. It was not a stolen car and no burglars' tools were found in it. Defendants each testified, without contradiction, as to the different lines of work they had been engaged in since they had left school, and so far as

the record shows they were all engaged in lawful trades and had been working regularly at their business.

The evidence is insufficient to sustain the verdict. Defendants denied any knowledge or ownership of the articles found in the creamery office. These exhibits, together with testimony concerning them, were admitted in evidence over the repeated objections of defendants' counsel, and their improper display before the jury was highly prejudicial to defendants. Where there is no evidence connecting the person accused of burglary with the tools found at the scene of the crime and no proof that the articles found had ever been in the possession of any of the defendants, evidence relating to them is inadmissible. *People* v. *Evertson,* 310 Ill. 397.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*