(Nos. 22631, 22733.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS BOLGER, SR., *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1934—Rehearing denied Feb. 6, 1935.*

JAMES M. BURKE, GEORGE M. CRANE, and WALTER B. PRENDERGAST, for plaintiffs in error Thomas Bolger, Sr., and Thomas Bolger, Jr.; BENJAMIN C. BACHRACH, and LESTER N. GROSSMAN, for plaintiff in error Otis B. Gibbs.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Thomas Bolger, Sr., Thomas Bolger, Jr., and Otis B. Gibbs were jointly indicted in the criminal court of Cook county for the murder of Owen Henry. They pleaded not guilty and waived a trial by jury. The court found them guilty of manslaughter and sentenced them to the penitentiary. Two writs of error have been prosecuted, one by Thomas Bolger, Sr., and Thomas Bolger, Jr., the other by Gibbs. For the purposes of a hearing, the causes are consolidated.

Owen Henry was about thirty-five years of age and lived in the city of Chicago. On the evening of February 12, 1934, at about 7:00 o'clock, he was in a grocery store located at 2100 North Sheffield avenue, on the northwest corner of Sheffield and Garfield avenues, in Chicago. Henry was endeavoring to sell Dan Zanetti, a clerk, perfume or to exchange it for food. Diagonally across the street from the store is a tavern owned and operated by Bolger, Sr. At this time the proprietor, his wife and a daughter, Gibbs, Frank Ray and Harriet Weckler, among others, were in the tavern. Bolger, Jr., who was employed by his father, came into the tavern about 7:00 o'clock and made an inquiry with respect to his duties for the evening. He was directed to return later. On his way from the tavern to a restaurant to obtain his evening meal he entered the grocery store while Henry was engaged in his effort to effect a sale of his merchandise. Thereafter William Lehmann, eleven years of age, came into the store to make a purchase. Bolger, Jr., asked Henry if he was attempting to sell perfume to Zanetti, and added that it was inferior merchandise. Henry responded by asking Bolger, Jr., if he was trying to spoil the sale for him, and the latter replied that he considered it his business to advise a friend against buying anything of an inferior quality. Bolger, Jr., ordered Henry to go outside. The latter went out without replying and Bolger, Jr., also departed. On their way out there was shoving and pushing, and a loaf of bread fell from a bread stand located about five feet from the door. Bolger, Jr., directed Henry to pick it up, and the latter complied. They engaged in a fight on the sidewalk in front of the store. While they were fighting, Bolger, Sr., ran out of the tavern and joined in the altercation. Henry fell to the sidewalk. Two or three minutes after Bolger, Sr., went across the street, Gibbs, who had been drinking beer in the tavern, picked up a club lying on the bar and went outside. As Henry fell Gibbs was standing beside him

with the club in his hand. Bolger, Jr., went on to the restaurant. Bolger, Sr., returned to the tavern and was followed by Gibbs. About 8:00 o'clock Henry was found on the sidewalk in front of the grocery store by two police officers who had received information from an undisclosed source that a man was lying in the street. There was a small pool of blood underneath his head. The officers caused Henry to be removed to a hospital, where he was pronounced dead.

A physician and surgeon connected with the office of the coroner performed a post-mortem examination on the body of Henry four days later. He expressed the opinion that Henry died as a result of traumatic sub-cortical hemorrhages of the brain, hemorrhages in the true and false vocal cords, and shock. On cross-examination he testified that he first saw the body at a hospital on the night of February 12, and that he signed the death certificate and stated in it that the cause of death was organic heart disease. He stated on re-direct examination that when he first viewed the body he noticed bruises on the left side of the head and neck and bleeding from the mouth; that the cause of death stated in the certificate was based upon information obtained from the officers who brought the body to the hospital and not as the result of any examination by him.

William Lehmann was present when the trouble started and remained until its termination. He resided with his parents at 2106 North Sheffield avenue and was a student in the fourth grade at the Arnold school. From his testimony it appears that Bolger, Jr., kicked Henry in the leg while the latter was picking up the loaf of bread; that as they were descending the steps leading from the door of the store to the sidewalk, Bolger, Jr., hit him behind the head with his fist; that Henry proceeded around the corner, going west on Garfield avenue, and that Bolger, Jr., followed, fighting with him, and that Henry came back

from around the corner and started north. At this time, according to the witness, Bolger, Sr., ran out of the tavern, headed Henry off and struck him in the jaw, and the witness added that Henry fell to the sidewalk; that as he was attempting to arise Gibbs hit him in the back of the head with a club; that Henry fell when he was hit, and that Bolger, Jr., then punched him in the face while he was lying flat on the sidewalk. Lehmann further testified that Henry did not raise his hand to fight or strike a blow. On cross-examination Lehmann stated that at the coroner's inquest Gibbs interrogated him, and in response to a question as to how many men were involved in the affray he answered five or six, including a janitor named Boyd, the two Bolgers, Gibbs, and others, and that Boyd kicked Henry in the stomach when he was lying down after Gibbs hit him.

Dan Zanetti, a witness for the People but apparently hostile to the prosecution, testified that he was acquainted with Bolger, Sr., and his son as customers of the grocery, but not with Gibbs, although he had seen him in the neighborhood; that nothing happened while Henry was picking up the bread; that after Bolger, Jr., and Henry departed from the store the witness stood at the door and saw them commence fighting; that Bolger, Jr., punched Henry; that they moved along as they were fighting; that he first saw Gibbs when the witness observed some men run out of the tavern; that Bolger, Jr., and Henry were on Sheffield avenue, a little south of the doorway; that he watched the participants all the time; that they were not out of his sight very much; that he saw Henry fall to the sidewalk but did not see him arise; that as he fell Gibbs was beside him with a long club in his hand; that he did not see Gibbs strike Henry with it; that the club at the trial resembled the one Gibbs carried; that Henry lay on the sidewalk in his presence about forty or forty-five minutes, and that he observed a small stream of blood coming from Henry's head. He stated on cross-examination that he did not see

Bolger, Jr., strike or kick Henry when the latter picked up the bread, and that Bolger, Jr., went out of the store first and that Henry struck the first blow. On re-direct examination Zanetti added, that although he did not know how many times Bolger, Jr., struck Henry he did see him make a couple of punches, and that at this time it seemed as if Henry was making an effort to effect an escape. The witness testified that he did not recollect whether Bolger, Jr., said to Henry in the store, "If you don't get out of here I will beat you up or slap you in the teeth," but that he might have made this statement to the police. To refresh his recollection he was shown a statement recounting his version of the affray, and he stated that he signed it at the police station. He then said that Bolger, Sr., struck Henry; that Gibbs was waving a club and acted as if he desired to hit Henry with it and that Bolger, Sr., shoved him aside.

Police officer Barnes testified that on the occasion that he arrested Bolger, Jr., he stated to the officer that he knocked the deceased down during the fight.

Frank Ray, Harriet Weckler and Walter Hughes testified in behalf of the plaintiffs in error. Between 6:45 and 7:00 o'clock on the evening in question Ray was drinking beer in the tavern. His testimony discloses that he saw Bolger, Jr., enter the grocery store; that about five minutes later he saw him come out of the store followed by a man who was striking him; that Mrs. Bolger was standing at the front window with the witness and exclaimed, "What's the matter? Somebody is fighting with Buddy!" that without soliciting aid, Bolger, Sr., came from behind the bar and walked across the street; that Gibbs followed about two minutes later; that the witness did not see the latter take anything with him and that he did not know when Gibbs returned to the tavern.

Mrs. Weckler resided at the same address as Bolger, Sr., and his family. She testified that about 7:00 o'clock

on February 12 she and Mrs. Bolger were sitting at the second table from a large bay window on the Garfield avenue side of the tavern; that the latter went to the window, and that when she screamed the witness also went to the window and saw Henry, with arms raised, striking Bolger, Jr. She stated on cross-examination that she did not see Gibbs leave the tavern, that she could not say when he went out, and that she did not see him take a club or anything with him.

Walter Hughes testified that at the time of the affray he was walking north on Sheffield avenue with his dog; that he was about one hundred fifty feet from the combatants when they came out of the store; that it seemed as though Bolger, Jr., was trying to protect himself; that a man ran across the street and separated them; that Henry started in pursuit of Bolger, Jr.; that Bolger, Sr., then turned around and gave him a shove, and that Henry tripped and fell. On cross-examination he stated that he did not observe any man with a club in his hand; that he knew Gibbs on February 12 but did not know who was participating in the fight; that Gibbs had been a precinct captain in the district for some time, and that the witness resided in the district.

Each of the three plaintiffs in error testified in his own defense. Thomas Bolger, Jr., twenty-five years of age, testified that when he went in the grocery store Henry was talking to Zanetti endeavoring to sell him perfume and other articles; that on another occasion Henry had unsuccessfully tried to sell the witness perfume; that he and Henry engaged in an argument, and that Henry had threatened to slap him in the face. He denied kicking Henry while the latter was picking up the loaf of bread from the floor or that he struck the first blow. According to him he arrived at the door first, and as he was going down the steps Henry pushed him. He stated that he lost his balance, became angered about it and pushed Henry

back; that the latter then hit him in the right eye and that he sought to defend himself. No witness corroborated him in his statement that the deceased struck him in the eye, and no evidence was offered by him tending to show any marks, wounds or abrasions about his face following the altercation between him and the deceased. On cross-examination he testified that he struck Henry about the arms or chest with his fist; that they fought about four minutes but denied that he pursued Henry around the corner. Upon interrogation by the trial judge the witness testified further that while he and Henry were fighting, the latter stumbled or fell to the ground but that he did not stay there; that he went down again; that he was lying on the sidewalk when the witness went away, but that he did not know how Henry happened to be on the sidewalk at that time; that "it was through us fighting and through me hitting him;" that he did not know whether he hit Henry and knocked him down the last time, and that he was making an effort to get up when the witness walked away.

Thomas Bolger, Sr., fifty-one years of age, resided at 2108 Sheffield avenue. It appears from his testimony that when his wife remarked that their son was in trouble he looked across the street and saw him fighting; that he ran out of the tavern with the object of stopping the fight; that he separated Bolger, Jr., and Henry, shoving his son one way and Henry the other; that Henry stumbled and fell; that a crowd had started to gather at that time and that he returned immediately to the tavern. On cross-examination he added that Gibbs was standing in front of Henry and himself before he separated his son and Henry; that Gibbs had a club in his hand; that there were two such clubs at the tavern, both alike, and that he shoved Gibbs away. On re-direct examination he testified that when he separated Henry and Bolger, Jr., Gibbs had just arrived on the scene; that the witness informed the latter

that the fight was over, and that he did not see him strike Henry at any time.

Otis B. Gibbs had resided at 2015 Sheffield avenue for a year and prior thereto at 2022 Sheffield avenue for three years. He testified that he was forty-three years of age and a carpenter; that during the afternoon of February 12 he had been at the tavern and was there in the evening; that about 7:30 o'clock there was a commotion across the street; that he was at the bar together with other patrons; that after Bolger, Sr., went across the street Mrs. Bolger said, "It's that Kelly gang; they are after Buddy;" that he went back to the bar, sat down and finished a glass of beer. He then picked up a club and according to his testimony walked across the street. He denied that he struck anyone with the club or that he waved it at any time, adding that he merely carried it in his hand; that he did not observe any other man with a club or armed in any fashion; that he saw a man unknown to him lying on the sidewalk; that he did not strike nor did he see anyone else strike him; that some men were leaning over him and it appeared that one was kicking him; that he did not know nor had he ever seen the person supposedly kicking the man, and that he returned to the tavern and remained there until about midnight. On cross-examination he testified that he seized the person who he assumed was kicking the man on the sidewalk and stopped him; that at this time the club was in the witness' hand and that he was about three feet from Henry; that he did not see Henry fall, and that Bolger, Sr., did not tell him how Henry happened to be on the sidewalk.

Additional facts and circumstances were shown by the evidence. A club with the initials "G. T. B." on it was introduced in evidence. Two clubs, both alike, were kept at the tavern. Lehmann testified that he first saw the club which Gibbs carried when it was moved into the tavern six or seven months prior to February 12, 1934, and that

it was like the one at the trial. At the coroner's inquest he identified a club by the initials "T. B." The letter "B" on the club in evidence, according to Lehmann, was not on the one he saw when the Bolgers moved into the tavern and the club was not the one he saw at the inquest. Zanetti said that the club at the trial resembled the one Gibbs carried. From the testimony of George T. Barnes, a police officer, it appears that he went to the tavern on February 15 and took a club from behind the bar and inscribed his initials on it; that prior thereto there were some marks on the club but no initials, and that the club in evidence was the one he found on the day named.

Before the trial two of the plaintiffs in error were granted leave to withdraw their pleas of not guilty and to file a motion to quash the indictment. The motion charged a violation of the statutory procedure for drawing, summoning and impaneling the grand jury and was supported by a stipulation of facts with respect to the manner of its selection. The motion was denied and the pleas of not guilty were again entered. After their motion for a new trial was overruled they moved in arrest of judgment, renewing the grounds specified in their motion to quash. This motion was also overruled. It is contended that the trial court erred in denying their motions to quash and in arrest of judgment. These contentions, however, cannot avail the plaintiffs in error, for it has been decided that they are without merit. *People* v. *Lieber,* 357 Ill. 423.

The remaining contention of Bolger, Sr., and Bolger, Jr., two of the plaintiffs in error, is that the finding and judgment of the trial court are not sustained by the evidence. Gibbs, the other plaintiff in error, contends that the evidence fails to establish his guilt beyond a reasonable doubt. To support their contentions certain portions of the evidence are scrutinized. It is asserted that the testimony of William Lehmann was contradicted by every other witness and was itself contradictory. In particular

it is pointed out that his statement that Bolger, Jr., kicked Henry in the leg was contradicted by Zanetti and denied by the plaintiff in error named; that his testimony that Henry did nothing was contradicted not only by the three witnesses in behalf of the plaintiffs in error but also by Zanetti, and that both the Bolgers admitted that Bolger, Jr., and Henry were engaged in a fight in front of the store. Zanetti was on friendly terms with at least two of the plaintiffs in error and the third was a precinct captain in the neighborhood in which they all lived or pursued their respective occupations. It appears that Zanetti was an unwilling witness, and it was necessary for the prosecution to contradict his testimony with a statement previously made by him. These circumstances and the bias of the witnesses called by the plaintiffs in error undoubtedly led the trial court to believe Lehmann's straightforward account of the entire altercation.

It is also argued that Lehmann's testimony is discredited by the inconsistent testimony with respect to the initials on the club used by Gibbs. The plaintiffs in error point out that he testified at the coroner's inquest that the initials "T. B." were on it at the time the Bolgers moved into the tavern, and that officer Barnes testified he placed the initials "G. T. B." on it three days after the fight. There is no evidence that the initials of Thomas Bolger were not on the club when it was brought to the tavern. Whether the officer inscribed his initials on it is obviously immaterial. The testimony discloses that Lehmann was not certain that the club in evidence was the same one that he saw carried into the tavern. Bolger, Sr., himself testified that he had two such clubs and that they were alike. The fact remains that a club was on the bar in the tavern, and that Gibbs, without seeking or obtaining permission of any member of the Bolger family, took possession of it and went outside. He had experienced no difficulty with Henry, and the conclusion is inescapable that he obtained

the club for the purpose of using it to aid his friends. Although Zanetti said that Gibbs merely brandished the club, he also stated that he was not observing the altercation all of the time. It was therefore entirely possible for Gibbs to have struck Henry with it and that Zanetti did not see him strike the blow.

The evidence discloses that Henry received heavy blows from the top of his head to his throat and that this violence caused his death. Bolger, Jr., intruded upon a business transaction in which the deceased was attempting to sell merchandise. He provoked an argument which culminated in a fight. The testimony of the prosecution is direct that each of the plaintiffs in error assaulted Henry, and that one knocked him down and that while prone the other two struck him. The physical condition of the deceased corroborated this testimony. It is suggested that some one other than the plaintiffs in error may have kicked and beaten the deceased and that it is uncertain who struck the fatal blow. There are some inconsistencies in the testimony of the witnesses for the prosecution, but none are of such a character as to destroy, or even impair, the material facts to which these witnesses testified. No errors, however, are assigned in the admission or rejection of testimony. The trial judge who heard the case saw and heard the witnesses testify. He had the opportunity to observe their conduct and demeanor while testifying and was in a better position to weigh their testimony than is a reviewing court. The law has committed to the jury, or to the trial court where a cause is tried by the court, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury or the trial court. *People* v. *Mangano,* 356 Ill. 178; *People* v. *Fortino,* 356 id. 415; *People* v. *Arbuthnot,* 355 id. 577; *People* v. *McPheron,* 354

id. 381; *People* v. *Herbert,* 340 id. 320; *People* v. *Yates,* 339 id. 421; *People* v. *Martin,* 304 id. 494.

There is in this case sufficient evidence to convict, and it cannot be said that there is a reasonable doubt of the guilt of the plaintiffs in error.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*