(No. 23293.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN FONTANA *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1935.*

LIBONATI, MUNIZZO & CEFFALIO, (CEFFALIO & ROMANO, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, RICHARD H. DEVINE, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

In September, 1933, in the criminal court of Cook county, the defendants were found guilty by the verdict of a jury of burglary and sentenced to the penitentiary. That judgment of conviction was reversed and the cause remanded for a new trial. (*People* v. *Fontana*, 356 Ill. 461.) Following the filing of the mandate of this court the defendants were again tried in July, 1934. By agreement the case was tried without the intervention of a jury. The trial court found the defendants guilty of burglary

and sentenced them to the penitentiary. The defendants bring the record of the latter trial here for review.

Two supposed errors committed by the trial court are urged here. First, it is contended that it was error on the part of the trial judge to admit evidence concerning burglars' tools found on the dairy premises, the subject of the burglary. The defendants in their argument failed to point out any evidence with reference to burglars' tools. However, we have examined the record, and the only evidence we find on that subject is that of officer Schuman. He testified as to the condition of the premises at the dairy at 2303 West Cermak road that night. He related that a pane of glass had been removed from the sky-light leading into the premises, that in the ice-box in the dairy building he found two safes with their doors off, and also found a sledge hammer "and some other burglars' tools there." No objection was made to this testimony nor was any motion made to exclude the statement. No burglars' tools were offered in evidence, as on the former trial. The contention is without merit.

It is next earnestly urged that the evidence was not sufficient to warrant the trial court in finding the defendants guilty. Each of the defendants again testified in his own behalf. The facts developed on the latter trial, with the exceptions hereinafter set forth, are substantially the same as stated in *People* v. *Fontana, supra,* and such facts will not be here repeated except in so far as we deem necessary to the decision of the present case.

On the southwest corner of West Cermak road (Twenty-second street) and Oakley avenue is a two-story building known as 2301 West Cermak road and 2206 South Oakley avenue. The front apartment consists of six rooms and was occupied by Frank J. Czarnecki and family. The entrance to this apartment is gained by a door from the street level at 2301 West Cermak, up a flight of stairs to the second story landing. Turning there to the left is a door

leading to the apartment. To the right is a window facing west, overlooking the creamery at 2303 West Cermak road. The rear apartment, known as 2206 Oakley avenue, was occupied by Mrs. Annette Johnson, her husband and son. The entrance to this apartment is by a door at the street level on 2206 Oakley avenue by a flight of stairs to the second floor. By turning to the right, entrance can be made into the rear of the Czarnecki apartment, which is to the left of the Johnson apartment.

The former opinion calls attention to the fact that none of the persons living in the two apartments of the second story of 2301 West Cermak testified. On the present trial Czarnecki testified that he occupied the front apartment with his family, consisting of his wife, two boys and three girls, the girls' ages being eleven, fifteen and nineteen years, respectively; that on the night of the burglary some member of his family had been out but returned between 9:30 and 10:00 o'clock and none of the family left the premises after that hour; that he retired about 11:30, and his wife and all the children were then in bed; that it was customary to keep the door in the front hall leading up to the apartment locked; that no key was kept down at the door, and the only time the door was open was when some of the family came home. Some time in the night, after he had retired, he heard knocking, got up, dressed, went outside and found police officers at the Oakley street entrance. He then returned to his apartment, opened the door leading to the hall and stairway off of Cermak road and saw a man (Fontana) sitting in this hallway. The man was "mussed up." Czarnecki asked the man what he was doing there, to which question no reply was made. The witness then said to him, "Come on out of there." An officer then arrested this man, who later stated that he had fallen down an air-shaft and wrenched his back. Czarnecki got a ladder out of the hallway for the officers. The ladder was placed by officer Quinn on the roof of 2303 and against

the building of 2301, going up to the roof of that building. The officers then brought the two other defendants into the Czarnecki apartment through the bed-room window.

Mrs. Annette Johnson testified that on the night of the burglary she was awakened about midnight, and looking up discovered a window adjacent to her bed had been raised. This window faced to the north. There was a sky-light in the building on the Cermak side. Ernster Bros.' creamery faces south and this window looks out on that creamery. On awakening she discovered a man who appeared to be partly in the window and partly on a gutter pipe that led to the roof of the building at 2301. In addition to this man she noticed another man climbing up the roof. She informed the police of her discovery. She had no girls in her family and no girls were living at that number.

Edward Quinn, a police officer, testified that he, with officer White, received a radio call in the early morning of June 29 and went to 2301 Cermak road; that White went to the front door and Quinn to the rear; that he, Quinn, later went to the front door, where White was, and tried the front door leading up to the second floor of 2301 Cermak road and found it locked; that Czarnecki, the tenant, let him in the second floor apartment in the front; that he, Quinn, went through out on the roof of 2303; that a woman's voice from the rear apartment said there were two men on the roof of 2301, and that three men had tried to get up and one of the men lost his grip on the pipe and fell down the air-shaft. The officer threw his light down there but saw no one there or on the roof of 2303, but later threw his light on the roof of 2301 and saw two heads sticking up behind the sky-light. The officer, in going for a step-ladder, met Czarnecki, who told him there was a man in his front hallway. The officer found Fontana coming from the front hall into the dining room, holding his back. The officer arrested him, turned

him over to officer White, returned to the second floor, put the ladder up to the roof of 2301 and went up to the roof; that thereupon the other two defendants came from behind the sky-light and he arrested them. All the defendants were bareheaded and neither Costello nor Fontana had a shirt on. On cross-examination this witness testified that the front door of 2301 had a very small pane of glass in it with a shade pulled down, and admitted he had testified at the former trial that the door had no glass in it and contained a wooden panel.

Police officer Dubic testified that on arriving at the scene in the squad car he ran along Oakley avenue to the rear of the building at Cermak and there met officers Quinn and White at the rear; that officers Quinn and White covered the rear. Dubic went towards the front, crossed the street and saw the forms of three men on the roof of the dairy but was unable to tell who they were. He remained there until Quinn and White brought the defendants out.

Officer White testified that he and officer Quinn went to 2303 Cermak in the squad car; that White got off in front and Quinn drove the car around to the rear, and that while he was at the front door he looked in and saw three forms in the front part of the creamery; that one of the forms was larger than the other two, and it looked as if they had white shirts or no shirts on at the time; that they came up and went back and were not very far from him; that he returned to the rear and was there a few seconds and then came back to the front; that a lady yelled "that there were folks on the roof;" that the officers obtained a ladder and went up on the roof; that a short time later officer Quinn brought down Fontana, who had on a torn white shirt; that White talked to Fontana as to what he was doing there, and Fontana said, "What do you think?" White also asked him if there was anyone else in there, and Fontana said no.

On the former trial the defendants testified that they were with four girls of about the ages of twenty-one and

twenty-two and that these girls entered the building at 2301 Cermak road. On the present trial the defendants stated that the four girls walked west after pointing out the building to them, but that they did not see the girls enter the building.

Under the facts as disclosed by the record it became an important factual issue as to whether the door at 2301 Cermak road was locked. The defendants severally testified that they obtained admission to the premises through an unlocked door at 2301. If that door, as a matter of fact, was locked, then the testimony of the defendants upon this material issue was untrue, and they gained entrance to the building, and thence to the roof, by means other than testified to by them. While the proceeds of the burglary never were found, nor were there any burglars' tools found in the possession of any of the defendants, yet the fact was conclusively proved that the premises at 2303 were burglarized on the night in question before the defendants were found on the adjoining premises at 2301, where it is admitted they did not live and were not guests. While the evidence connecting the defendants with the burglary is circumstantial, yet where the evidence is competent, and if credible is sufficient to establish guilt beyond a reasonable doubt, such evidence will justify a judgment of conviction. (*People* v. *Hart,* 323 Ill. 61.) There was the positive evidence of officer Quinn that the door at 2301 was locked at the time he endeavored to gain entrance to the building. The evidence of Czarnecki, while not positive upon this subject, yet tended to corroborate the testimony of officer Quinn. The record here is not in the same condition as on the former hearing in this court. There is evidence which, if credible, is sufficient to sustain a judgment of conviction against the defendants.

The trial judge saw and heard the witnesses testify. That opportunity is not afforded this court. The fact that the trial judge had the opportunity to observe the con-

duct and demeanor of the witnesses while testifying is a circumstance that this court has the right to consider. The law has committed to the trial judge, where a cause is tried before the court without the intervention of a jury, the function of determining the credibility of the witnesses and the weight to be accorded their testimony, and where the evidence is merely conflicting upon a material issue this court will not interfere with the finding of the trial court. *People* v. *Bolger,* 359 Ill. 58; *People* v. *Kuchta, 296* id. 180.

There is now in this case sufficient evidence to warrant a conviction, and we are unable to say, after a thorough review of the record, that the finding of the trial court should be disturbed.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*