(No. 38086.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN U. CRADDOCK *et al.,* Plaintiffs in Error.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

ROBERT H. JONES and ROY P. HULL, both of Peoria, for plaintiffs in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JAMES V. CUNNINGHAM, State's Attorney, of Peoria, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JAY H. JANSSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendants, John U. Craddock and William R. Morrow, were indicted for the crime of burglary in Peoria County. They were tried by a jury, found guilty and each sentenced to the penitentiary for a term of not less than 5 years nor more than 8 years.

The record discloses that on October 14, 1962, at approximately 8:25 A.M., a Peoria police officer, Cecil Sandefur was patrolling in his car the 2700 block of North East Adams Street, in Peoria. As he drove his squad car in front of Mid-State Heating and Sheet Metal Company at 2727 North East Adams Street he saw a blue Ford automobile pull away from the curb. He decided to investigate and stopped his squad car 12 to 15 feet from the entrance of the Mid-State company. While he was looking at the door he observed the defendants run out through the inner door, throw open the screen door and run from the premises. He recognized both men as he had personally known them before.

The two defendants ran from 2727 North East Adams Street, northeast on Adams Street to Alexander Street, down an alley and finally up a boxed stairway at the rear of the drugstore at 2827 North East Adams Street, approximately one block from the Mid-State company. Sandefur testified that he kept them in view at all times. He radioed the police radio operator for assistance and then got out of his car and went to the entrance of a closed stairway. While standing at said entrance the defendant Morrow came running back down the stairs. Upon seeing officer Sandefur, Morrow started to turn around and go back up the stairs as the defendant Craddock, who was right behind Morrow, and also running down the stairs, ran into Morrow.

Officer Sandefur told the defendants that they were under arrest and asked them what they were doing there. Morrow answered, "I was up there relieving myself," and Craddock said, "We was up there looking for a friend." The steps were later checked for moisture and none was found.

Additional police officers then arrived. A pair of gloves was removed from Morrow's right rear pocket. Inside the stairwell, a fully loaded .32 caliber revolver, a pair of men's gloves, a pair of pliers and a transistor radio were found.

The defendants were then taken to the police station and Sandefur returned to the Mid-State company. He observed that the molding had been removed from the entrance door and the glass pane was sitting against the left wall as one entered the building. In the office area of Mid-State company, drawers were pulled out of a desk and paper, pencils and pens were "messed up." A small hole was knocked in the wall of the restroom and a rather large hole in the wall of the main portion of the building. A screw driver and brace and bit were also found on the work bench.

Later in the morning Melvin E. Mason, who owns Mid-State, found a brief case containing two flashlights, a pair of gloves, a chisel, two screwdrivers, a crowbar and a sledge

hammer which he testified did not belong to him nor any of his employees. He also testified that he had closed his shop and locked the front door of the shop the evening before, a Saturday, at approximately 5:00 P.M. Mason arrived at the building on Sunday at 9:20 A.M, pursuant to a call by the Peoria police department. He also observed that the front door was still locked, but that the beading holding the glass had been pried off, and that the gothic type glass bearing an "American Standard" insignia had been removed.

Both defendants testified on their own behalf. Defendant Craddock said he was looking for one Lucky Hedgpeth who lived in an apartment over 2727 East Adams street, the entrance to which was next door to the entrance of Mason's business and was designated 2725 East Adams street. He also testified he was having trouble with Hedgepeth and therefore was armed with a .32 caliber gun. He also stated that he and Morrow walked down the front stairs leading to the apartments (2725 North East Adams Street) that were adjacent to the Mid-State company and saw a policeman. Because of the fact that Morrow had the gun in his possession, they ran until found by Sandefur in the enclosed stairway. Craddock admitted that he threw his gun, gloves, pliers down the stairwell.

Defendant Morrow said substantially the same thing as Craddock in regard to coming out of the door at 2725 North East Adams Street and seeing Sandefur. Morrow testified that he knew Craddock was armed with a loaded gun. He testified that when he saw Sandefur he said "let's get out of here." He claimed that he ran because he was afraid since he had previously been beaten up by policemen, which was corroborated to an extent by an attorney then hired by him. Morrow said he threw the transistor receiver radio down in the stairwell because he was scared.

The defendants do not deny that the Mid-State Heating and Sheet Metal Company was in fact burglarized but they

do contend: (1) that it was not proved beyond a reasonable doubt that they were guilty of said burglary; (2) that the court erred in admitting into evidence the contents of the brief case discovered by Mason; and (3) that the court erred in giving one of the State's instructions.

The defendants' claim that the evidence is insufficient is based primarily upon the assumption that the testimony of Sandefur as to the door from which the defendants emerged, the only evidence directly connecting the defendants with the burglarized premises, was uncertain and insufficient to connect them with the crime.

Officer Sandefur testified positively that while he was sitting 12 to 15 feet away from the entrance at 2725 North East Adams Street, he saw the two defendants step through the inner door where the glass had been removed, throw open the screen door and run. There were no obstructions impairing the officer's vision, the day was "nice" and the time was 8:25 A.M. Sandefur's testimony was not shaken on cross-examination and, in fact, it was elicited by defense trial counsel that there was no question or doubt in Sandefur's mind concerning the door from which he saw the defendants emerge. Significantly the entrance at 2725 North East Adams Street, from which the defendants claim they ran, did not have an outer screen door as did the Mid-State Heating and Sheet Metal Co., which screen door Sandefur testified he observed as the defendants ran through.

Sandefur's testimony, particularly when considered with the fact that the defendants ran upon seeing a policeman and had in their possession burglary tools, was in our opinion clearly sufficient to establish their guilt beyond a reasonable doubt. The defendants cite *People* v. *Fontana,* 356 Ill. 461, as authority to the contrary, but an examination of that case reveals that it does not in fact substantiate the contentions of defendants.

In the instant case defendants were seen coming from the burglarized premises. They admitted disposing of a

loaded .32 caliber revolver, a pair of men's gloves, a pair of pliers and a transistor radio on the enclosed stairway. Another pair of gloves was taken from defendant Morrow's pockets by officer Pickel. Both defendants were, therefore, placed at the scene of the crime by competent direct evidence and were shown to have tools suitable for burglary purposes in their possession. In the *Fontana* case the only evidence connecting defendants with the burglary was circumstantial and the defendants were not found in the possession of any burglar's tools. Clearly *People* v. *Fontana* is distinguished, on its facts, from the present case.

The defendants' version of the happenings on October 14, 1962, that they were looking for a person named Hedgepeth, was evidently disbelieved by the jury who heard the testimony of defendants and could observe their demeanor while testifying. The issue raised by the defendants' testimony is a question of fact and it is fundamental that it is the peculiar province of the jury to weigh the evidence and determine facts.

It is defendants' second contention that the contents of the brief case found by Mason were improperly admitted into evidence. In *People* v. *Stanton,* 16 Ill.2d 459 at 469, this court held that burglar tools found in a building from which the accused fled are properly received in evidence. The court pointed out in the *Stanton* case that burglary can seldom be proved by direct evidence of the actual breaking and entering and the inference of guilt in most cases must be drawn from other facts satisfactorily proved, citing *People* v. *Geisler,* 348 Ill. 510.

Also in the instant case defendants' connection with the brief case and its contents was, in our opinion, sufficiently close to allow their admission into evidence. Defendants were seen fleeing from the burglarized premises by a police officer and the burglary tools in question were found by the owner of the business in the premises shortly after defendants fled. The exhibits were admissible. *People* v.

*Pulaski,* 15 Ill.2d 291; *People* v. *Stanton,* 16 Ill.2d 459; 469; *People* v. *Panczko,* 381 Ill. 625; *People* v. *Fitzpatrick,* 359 Ill. 363.

Defendants' final contention concerns the propriety in giving People's Instruction No. 7 which is as follows: "It is not necessary that the jury should believe that every incriminating fact or circumstance in evidence before them has been proven beyond a reasonable doubt, but that it is sufficient if the jury believe from the evidence in the case that every material allegation in the indictment, in manner and form as therein charged, has been proven beyond a reasonable doubt."

This particular instruction, as defendants concede, has been repeatedly approved as a correct statement of the law. (See, *e.g., People* v. *Ritcheson,* 396 Ill. 146.) The defendants contend, however, that a jury under the circumstances of this case would be misled as to which facts are material. However, other instructions given by the court set forth that it is incumbent upon the People to prove each and every allegation in the indictment beyond a reasonable doubt before the jury would be justified in returning a verdict of guilty and also set forth in detail the material allegations of the indictment that must be proved beyond a reasonable doubt. The instruction was, therefore, properly given.

No other errors being alleged the judgment of the circuit court of Peoria County is accordingly affirmed.

*Judgment affirmed.*