STATE OF NEBRASKA, APPELLEE, v. JACKSON HUNTER, APPELLANT.

163 N. W. 2d 879

Filed January 10, 1969. No. 36960.

Shrout, Nestle & Caporale, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and STUART, District Judge.

STUART, District Judge.

The defendant, Jackson Hunter, was charged with attempted burglary. After trial to a jury, he was found guilty and sentenced to the Nebraska Penal and Correctional Complex for a period of not less than 6 years nor more than 8 years.

The record discloses that on June 5, 1967, at approximately 1:30 a.m., the night watchman of the Weslake Bar in Omaha, Nebraska, heard noises on the roof as though someone were chopping the roof. Police were called; two arrived shortly thereafter; and each policeman walked parallel with the building on opposite sides of the structure. Upon reaching a point near the rear of the bar one officer observed two men, one man fleeing from the bar and the defendant in mid-air flight 4 or 5 feet from the building and 2 or 3 feet from the ground. The other officer observed the two men a split second later. Upon alighting, the defendant fled and the officers, after warning, each shot at him. The defendant was struck in the right leg, fell, and was apprehended. Each officer testified that he continuously observed the defendant from the time the officer first saw the defendant until the time of defendant's' apprehension.

The defendant was taken to the hospital. After his removal from the vicinity a detective sergeant arrived at approximately 1:50 a.m., and during his investigation

found an axe lying near two holes in the roof and a crowbar lying 6 or 8 feet northwest of the building. During all this time it was pouring rain. Approximately 9 hours thereafter a police photographer took four pictures including one showing the two holes in the roof of the building near the northwest corner.

The defendant assigns as error the admission in evidence of the four photographs. The photographer testified that the pictures were fair and reasonable representations of what he observed at the time of the taking of each of the pictures. At the trial the detective sergeant was allowed to mark on the picture of the roof the spot where he found the axe and was allowed to mark on the picture of the rear portion of the bar the approximate place that he found the crowbar. There was no evidence to the effect that conditions changed in any way from the time of the original investigation until the time of the taking of the photographs, other than that the rain stopped and daylight came. In view of the extreme difficulty of taking photographs at the time of the original investigation, we are of the opinion that the court was correct in the exercise of its discretion in the admission in evidence of these photographs taken during the following daylight hours. A photograph proved to be a true representation of the person, place, or thing which it purports to represent is competent evidence of anything of which it is competent and relevant for a witness to give a verbal description. Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873; Fugate v. State, 169 Neb. 420, 99 N. W. 2d 868; Pribyl v. State, 165 Neb. 691, 87 N. W. 2d 201. The photographs were properly admitted in evidence.

The defendant next assigns as error the admission of the axe and crowbar in evidence, and cites in support thereof People v. Fontana, 356 Ill. 461, 190 N. E. 910. In this connection it should be pointed out that there was direct testimony that there was no hole in the roof of the building in which the bar was located less than 30 min-

utes before the alleged crime; that there two holes in the roof immediately after the alleged crime; and that the axe was found beside the hole in the roof and the crowbar was found near the building within 30 minutes after the alleged crime. The defendant was seen falling toward the ground at a point where the only building nearby from which he could have jumped was the structure housing the bar. Since the Fontana case the Illinois Supreme Court has distinguished it and now sets forth the rule as follows: "We have held that burglary tools found in a building in which accused was caught or from which he fled are competently received in evidence." People v. Santucci, 24 Ill. 2d 93, 180 N. E. 2d 491. Also in People in Craddock, 30 Ill. 2d 348, 196 N. E. 2d 672, the Illinois Supreme Court again held that when defendants were seen fleeing from burglarized premises and the burglary tools in question were found by the owner of the business in the premises shortly after defendants fled, the burglary tools were admissible in evidence. This assignment of error has no merit.

For the reasons given, we have concluded that there is no error in the record herein and the judgment of the trial court should be and is affirmed.

AFFIRMED.