THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRISON WASHINGTON, Plaintiff in Error.

*Opinion filed October 22, 1927.*

1. CRIMINAL LAW—*defendant should be given opportunity to correct error in statement on cross-examination.* Where the defense is an alibi and the defendant has testified on direct examination that he was in another city during the month when the crime was committed but in an extended cross-examination states that he was away during another month, he should be allowed, on redirect examination, to state whether his statement on cross-examination was correct.

2. SAME—*what instruction as to testimony of an accomplice should not be given.* The jury should not be instructed that it is competent to convict on the uncorroborated testimony of an accomplice "if the jury weighing the truthfulness of his testimony think him worthy of belief, taking into consideration whether or not he has been corroborated by other credible witnesses, or facts and circumstances appearing upon the trial, if any, which tend to corroborate his testimony," as such instruction is contradictory and tends to mislead the jury into thinking that the court considered that the testimony of the accomplice had been corroborated.

3. SAME—*an instruction should not infer that lack of evidence may be considered in determining guilt or credibility of alibi witnesses.* It is the insufficiency or lack of evidence offered by the People to prove guilt which creates a reasonable doubt, and where the defense is an alibi and guilt or innocence depends entirely on the credibility of witnesses the jury should not be instructed that they "are not bound to believe anything to be a fact because a witness has stated it to be so, provided you believe from all the evidence or lack of evidence that such witness was mistaken or has knowingly testified falsely."

4. SAME—*what instruction as to credibility of defendant's testimony is improper.* An instruction that the jury may consider the interest of the defendant and his demeanor and conduct on the witness stand should not be given where it applies to the defendant alone, especially where testimony of witnesses for the prosecution is subject to the suspicion that they were trying to curry favor with the officials and fend off prosecution from themselves.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. ELBERT S. SMITH, Judge, presiding.

PAUL THOMPSON, ROY M. SEELEY, WILLIAM J. LAW-
LER, and ALFRED H. GREENING, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HUGH GREEN,
State's Attorney, and MERRILL F. WEHMHOFF, for the
People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the
court:

Plaintiff in error, a colored man, was indicted, tried,
convicted and sentenced to the penitentiary, in the circuit
court of Morgan county, for the larceny of a Ford Model
"T" automobile, engine No. 11,325,336. The record is be-
fore this court for review upon writ of error.

July 5, 1925, a Ford sedan belonging to Elmer E. Hag-
ler was stolen from in front of a building on the corner
of Capitol avenue and Fourth street, in Springfield. Hag-
ler bought the car March 31, 1925. At the time it was as-
sembled it contained a Ford Model "T" automobile engine,
No. 11,325,336, but there is no evidence in the record that
this particular engine was in the car when it was stolen or
what number was then on the engine. In February, 1926,
State officials in search of stolen automobiles went to the
garage of C. P. Hutson, in Jacksonville, and took there-
from several stolen cars, among them a Ford roadster—not
a sedan. The officials took from the roadster the engine,
which bore the number 6,047,453. Upon the application of
heat from an acetylene torch it was disclosed that the origi-
nal engine number, 11,325,336, had been erased and the
number 6,047,453 stamped thereon in its place. The next
day plaintiff in error was arrested on complaint of Hutson
on a warrant charging the larceny of a Ford roadster.

The only witnesses in any way tending to connect plain-
tiff in error with the crime charged were Hutson and Louis
Starr, who was then under indictment in the Morgan county
circuit court, together with Roy Drendel, for the larceny

of an automobile. Hutson testified that he purchased the Ford roadster from plaintiff in error in August, 1925, for $75. His examination revealed the fact that if he did so purchase it the purchase was made under circumstances which would lead any reasonable man to believe that the car was a stolen car and that he was guilty of purchasing stolen property knowing it to be stolen. Starr testified that on July 5, 1925, he went to the residence of Roy Drendel, and not finding him at home went to plaintiff in error's home; that plaintiff in error told him he would give him $100 if he delivered a car for him at witness' own door; that they then drove down on Capitol avenue, in Springfield, and saw a man and woman get out of a Ford sedan on Capitol avenue, between Fourth and Fifth streets, and go into the Hagler building; that witness then went over to the Ford sedan and started it, but when he had started it it refused to run, and he went back and told plaintiff in error that he could not get it to run; that plaintiff in error then went and started the car and drove it to his own garage.

Plaintiff in error denied that at any time did he meet Starr and in his company drive around Springfield in search of an automobile and denied that he directed Starr to steal the Ford sedan. He denied Starr's testimony *in toto* and denied selling the roadster to Hutson. He testified that in addition to running a garage he was a motorcycle racer and gave exhibitions in motorcycle riding at county fairs, picnics and other gatherings; that on June 30, 1925, he left Springfield for Detroit, Michigan, where he raced on July 4, 1925, and did not return to Springfield until the 14th or 15th of July. Plaintiff in error's testimony was corroborated by two colored men, who testified to accompanying him to Detroit on the trip and returning with him, and also by a brother, who testified that from the first of July, 1925, until the 16th he looked after plaintiff in error's garage and that plaintiff in error was not there at that time. This witness was asked the question, "Was Washington in

Springfield at his garage during the time you just mentioned?" to which the witness replied, "No, sir." This answer was stricken out on motion of the State's attorney, the court saying, "Motion allowed; if he was where this witness was he may testify." He was also corroborated in his alibi by his sister-in-law, who testified that she went to plaintiff in error's home on the 30th of June, 1925, and remained there until about the 15th, and that the occasion of her staying there was on account of Washington's going to Detroit to race and witness went out there to stay with her sister. Another witness testified that on July 1, 1925, he called at Washington's home to see if he could get him to take part in some races at the fair ground on August 4 and that he could not find him.

While there are some contradictions and inconsistencies in the testimony of plaintiff in error's witnesses, no witness was called by the State, other than Starr, to prove plaintiff in error's presence in Springfield at any time between June 30 and July 15, 1925. There were inherent improbabilities in Starr's testimony, and his testimony and that of Hutson was open to the suspicion that they were trying to curry favor with the officials and so fend off prosecution from themselves. Under this state of the testimony it is our duty, before an affirmance, to scrutinize the record carefully to see that it does not contain error which possibly may have prejudiced the jury in their finding against the defendant.

While plaintiff in error testified to leaving Springfield for Detroit on June 30, 1925, and being in Detroit all the time until about July 14 or 15, during his extended cross-examination he at one time stated that between the first day of June and the 15th he was in Detroit. On re-direct examination his attorney asked him the question: "If you stated in answer to the State's attorney that you left in June—the first of June—and was in Detroit during—up to the 15th of June—is that correct?" and also, "Were you

in Detroit at any time in the first part of June?" to both of which questions the State's attorney's general objection was sustained by the court. If the witness in his cross-examination inadvertently used the word "June" instead of "July" he should have been given the opportunity to correct the mistake.

Plaintiff in error testified that at his home he had a conversation with Hutson four or five days after he was arrested, at which Abe Love was present. He was then asked by his attorney, "Directing your attention to the first conversation there at your house, did Mr. Hutson say this, or this in substance: That he was sorry he got you mixed up in this automobile matter, and that the only reason he did it was that you were not a resident of Morgan county and that he thought it might be all right?" Although foundation for this question had been laid by interrogating Hutson with reference thereto on his cross-examination, the court sustained the State's attorney's general objection and said, "The objection is sustained; I don't see how it is material whether he did have any conversation at any time." This statement of the court was not only error, but it may have been very prejudicial in leading the jury to believe that the testimony of plaintiff in error and another witness to the effect that at the aviation field on Easter Sunday Hutson said to plaintiff in error, "I am sorry that I got you into this deal, and if you will say you sold me a Ford roadster I will pay you $50," was likewise not material. The court also erred in refusing to admit in evidence a letter written by Starr to plaintiff in error March 9, 1926, containing a threat with reference to May, at which time this case was expected to be tried.

At the request of the State's attorney the court gave to the jury the following instruction:

"The court instructs the jury that it is competent to convict upon the uncorroborated evidence of an accomplice, if the jury, weighing the truthfulness of his testi-

mony, think him worthy of belief, taking into consideration whether or not he has been corroborated by other credible witnesses, or facts and circumstances appearing upon the trial, if any, which tend to corroborate his testimony, provided the evidence taken all together proves the guilt of the defendant as charged beyond a reasonable doubt."

This instruction contains a contradiction. If the testimony of the accomplice was uncorroborated he could not have been corroborated by other credible witnesses or by facts and circumstances appearing on the trial. The jury might be misled into thinking that the court must have considered that the testimony of the accomplice in this case had been corroborated by other credible witnesses or by facts and circumstances appearing on the trial. This instruction should not have been given. *People* v. *Andreanos,* 323 Ill. 34.

The court also instructed the jury:

"You are not bound to believe anything to be a fact because a witness has stated it to be so, provided you believe from all the evidence or lack of evidence that such witness was mistaken or has knowingly testified falsely."

It is the insufficiency or lack of evidence offered by the People to prove guilt which creates a reasonable doubt, but it is a different proposition to say that a lack of evidence from any source may be considered by the jury in determining a defendant's guilt (*People* v. *Jordan,* 292 Ill. 514,) or the weight to be given to the testimony of his alibi witnesses, to whom this instruction applied.

The court gave for the State a lengthy instruction as to the testimony of a defendant on trial, which contained the following: "And in determining the degree of credibility that shall be accorded to his testimony the jury have a right to take into consideration the fact that he is interested in the result of the prosecution and his demeanor and conduct upon the witness stand; and the jury may also take into consideration the fact, if such is the fact, that he has

been corroborated or contradicted by credible evidence or by facts or circumstances in evidence." It was error to give this instruction in this case, as it applies these rules to the testimony of plaintiff in error without applying them to the testimony of the other witnesses.

We are of the opinion that the judgment of the circuit court of Morgan county should be reversed and the cause remanded.

*Reversed and remanded.*