(No. 22876.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER MARTISHUIS, Plaintiff in Error.

*Opinion filed June 14, 1935—Rehearing denied October 4, 1935.*

GEORGE M. TEARNEY, and EUGENE A. DELSON, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Walter Martishuis was indicted in the criminal court of Cook county for an assault upon Frank Piotrowski with intent to commit robbery, an assault with intent to commit murder, an assault with a revolver, and an assault with a deadly weapon of some hard substance, the further description unknown. He entered a plea of not guilty, waived a trial by jury, and the court found him guilty of an assault with intent to commit robbery. Motions for a new trial and in arrest of judgment were overruled and the defendant was sentenced to imprisonment in the penitentiary for an indeterminate term of from one to fourteen years. Martishuis prosecutes this writ of error.

On the afternoon of November 11, 1933, at about 3:15 o'clock, a man entered a tavern owned and operated by

Frank Piotrowski at 1153 West Forty-seventh street, in the city of Chicago. At this time the proprietor, his wife and two patrons were in the tavern. The man demanded that Piotrowski give him a drink, but the proprietor refused. As the two customers who had been drinking beer in the tavern departed, the intruder said, "Hold-up." He was brandishing a revolver, and in obedience to his command Piotrowski and his wife came from behind the bar. Two shots were fired and the tavern keeper ran outside. Upon his arrival at his sister's tavern, a short distance away, he exclaimed, "A fellow shot twice—wanted to hold me up." A police squad arrived shortly at Piotrowski's tavern. He accompanied the officers in a search for the man at various taverns in the neighborhood. At 1042 Forty-eighth street a group of men were standing by a large window in a tavern owned by John Kobia. Piotrowski saw the man who had been in his tavern and observed that he was running to the back. Two of the officers went in this tavern and the third proceeded to the rear of the premises. As the defendant was running through the kitchen door, with officer Smiljanik in pursuit, he was apprehended by officer Devon, who was standing near the rear entrance. The defendant drew a revolver and pointed it towards the two officers. Smiljanik seized the revolver and discovered that it had been recently fired, as shown by the smell of powder. Piotrowski appeared and informed the officers that the defendant was the man sought. The defendant did not reply to this statement. Piotrowski next saw the defendant three days later in the felony court. In reply to a question by the presiding judge in that court he answered that the defendant was the man who held him up.

Piotrowski was called as a witness by the court. He testified that he did not remember how the man who perpetrated the offense was dressed but that he was wearing an overcoat; that he did not know whether he was wearing a hat or a cap, and that he had never seen him prior

to the day in question. He added that the defendant resembled the man who had fired the shots but that he was not sure he was the same person. The witness also said that he rode in the squad car with the defendant immediately after the latter's arrest. On cross-examination, in response to a question whether the defendant was the man in his tavern on November 11, 1933, he said, "It looks something like him, but I am not sure." He admitted, however, that he identified the defendant to the police officers ten or fifteen minutes after the hold-up, and that he saw the defendant in the felony court and on that occasion identified him as the perpetrator of the offense.

According to the testimony of police officer Mark Smiljanik it appears that in response to a radio call he and two other officers who were in a squad car with him went to Piotrowski's tavern; that the latter informed them there had been a "stick-up," during which two shots were fired at him; that he described the man's wearing apparel as a brown overcoat and a gray cap, and that the proprietor's sister informed them that he resided in the neighborhood. When the defendant was arrested he was wearing a brown overcoat and a gray cap. The witness testified further that Piotrowski asked the defendant why he wished to kill him, and that the defendant disclaimed knowledge of the occurrence owing to intoxication. On the following morning the officer had a conversation with the defendant, and the latter, then sober, again professed ignorance of his actions on the preceding afternoon. On cross-examination Smiljanik stated that he went to Kobia's tavern about ten minutes after his arrival at Piotrowski's tavern. He testified further that the defendant was badly intoxicated when arrested. Officer Peter Devon corroborated Smiljanik's testimony.

Officer Theodore H. Lubeck, assigned to the gun section of the detective bureau, saw the defendant about 9:30 o'clock in the evening of November 11. It appears from

his testimony that the defendant was then sober and talked coherently. On cross-examination he testified that the defendant informed him that he was intoxicated at the time the robbery occurred.

The defendant testified in his own behalf. When interrogated as to whether he was in Piotrowski's tavern on the afternoon of November 11, 1933, he replied, "I don't think so." He testified that on the day named he left his home about noon, drank considerably, and that the next thing he knew he had been arrested. According to his testimony he was arrested while standing in front of the bar in Kobia's tavern in the presence of five or six men. He denied engaging in conversation with either the police officers or Piotrowski. He also testified that when he awoke the next day, a Sunday, he endeavored to ascertain why he had been arrested; that he did not know where he obtained the revolver which was taken from him, and that he did not enter the premises of the complaining witness with the intention of committing a robbery. On cross-examination he stated that he had been at the bar where arrested about two hours, and that he had known Piotrowski a short time before November 11 but had never been in his tavern prior thereto. When interrogated as to why he ran when the officers entered Kobia's tavern he denied having been in the tavern. He then said that he did not run when arrested.

It appears that Arthur F. Cummings had known the defendant for five or six years and was with him on November 11, 1933, from noon until about 2:15 P. M. He testified that during this interval they visited a number of taverns, and that the defendant had quite a few drinks and became intoxicated. Cummings did not know whether the defendant was carrying a revolver.

To obtain a reversal of the judgment the defendant makes the contentions (1) that the court erred in finding him guilty of an assault with intent to commit robbery;

(2) that the evidence fails to establish his guilt beyond a reasonable doubt; and (3) that his identity as the person who committed the crime was not proved.

Section 20 of the Criminal Code (Cahill's Stat. 1933, p. 991; Smith's Stat. 1933, p. 1007;) defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." One who unlawfully points a loaded revolver at another within shooting distance, in a threatening manner, is guilty of an assault, and although the assailant is prevented from carrying out his felonious purpose by the intervention of some fact not of his own will, the offense is nevertheless complete, irrespective of whether the weapon is discharged. (*People* v. *Henry*, 356 Ill. 141; *People* v. *Connors*, 253 id. 266.) The evidence discloses that the defendant pointed a revolver at Piotrowski, ordered him and his wife to come from behind the bar and announced that a hold-up was in progress. The tavern keeper, thoroughly frightened, ran out of his place of business, and the defendant, after firing two shots, made his departure. The commission of an assault was established. In such cases, where the general fact is thus proved, a foundation is laid for the introduction of any legal and sufficient evidence that the offense was committed by the accused and that it was done with a criminal intent. (*Carlton* v. *People*, 150 Ill. 181.) Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence. (*People* v. *Beacham*, 358 Ill. 373; *People* v. *Yuskauskas*, 268 id. 328; *Carlton* v. *People, supra; Crosby* v. *People*, 137 Ill. 325.) There is no legal distinction between direct and circumstantial evidence so far as their weight and effect are concerned. *People* v. *Buskievich*, 330 Ill. 532.

The defendant argues, however, that proof of intent to rob the complaining witness is wanting. To sustain his argument he invokes the rule that where it is necessary to

prove specific intent as a prerequisite to a conviction it is competent to prove that the accused was at the time wholly incapable of forming such intent, whether from intoxication or otherwise. (*Bruen* v. *People,* 206 Ill. 417.) The substance of the defendant's testimony is to the effect that he was so intoxicated that he was not conscious of his actions. From the record it appears not only that he fired two shots in Piotrowski's tavern, but also that he was apprehended while attempting to escape. At that time he drew a revolver out of his overcoat pocket which had to be taken from him. In other words, in less than half an hour following the attempted robbery the defendant was sufficiently sensible to endeavor to escape through the back door of another tavern when he saw Piotrowski and the police officers. Moreover, although he was arrested about 4:00 o'clock in the afternoon, he was sober and talked coherently at the police station several hours later. The argument that the defendant was so inebriated as to preclude him from committing the assault with the specific intent to rob is without merit.

The evidence with respect to the defendant's identification is scrutinized. In particular, our attention is directed to the complaining witness' testimony at the trial that although the defendant resembled the man who held him up he was not then certain of his identity. It is observed that it was necessary to call Piotrowski as the court's witness, and that he was a reluctant, if not a hostile, witness. Other testimony with respect to identity supports the judgment. Fifteen minutes after the police reached the scene of the attempted robbery they apprehended the defendant solely because the complaining witness identified him in a group of men. Again, Piotrowski positively identified the defendant in the felony court. Nor did the defendant deny being present in Piotrowski's tavern. His testimony amounts to an admission, on the other hand, that he was present but that he did not know what happened. The

identity of the defendant as the perpetrator of the crime for which he was convicted is clearly established.

No errors are assigned in the admission or rejection of testimony. The trial judge had the opportunity to observe the conduct and demeanor of the witnesses while testifying and was in a better position to weigh their testimony than is a reviewing court. The law has committed to the trial court, where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the trial court. (*People* v. *Bolger*, 359 Ill. 58; *People* v. *Lipiano*, 358 id. 475; *People* v. *Mangano*, 356 id. 178.) From a consideration of all the evidence it cannot be said that there is a reasonable doubt of the defendant's guilt.

The judgment of the criminal court is right, and it is affirmed.

*Judgment affirmed.*