(No. 26073.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VINCENT J. CULLOTTA, Plaintiff in Error.

*Opinion filed April 15, 1941.*

JAMES M. BURKE, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Vincent J. Cullotta was indicted in the criminal court of Cook county for robbery while armed with a pistol. He pleaded not guilty and waived a jury trial. The court, sitting without a jury, found him guilty of robbery unarmed and sentenced him to the State penitentiary for a term of not less than one nor more than twenty years. The cause is here by writ of error.

The sole question is whether there is sufficient evidence identifying the defendant as the robber to establish his guilt beyond a reasonable doubt. On June 11, 1940, Harold Fenstermacher was robbed of $48.33 at about 5:15 P.M.,

while engaged in selling and delivering milk on Seventy-sixth street on the south side in Chicago. It was daylight. He testified that as he was leaning over to put empty jars in the rear part of his milk truck, someone poked a gun in his ribs, and he was told to turn around and keep quiet. The intruder directed him to drive the truck, then facing west on Seventy-sixth street, directly west to Exchange avenue, the next thoroughfare intersecting Seventy-sixth street, then to turn right on Exchange avenue and to turn right again into an alley. After going a short way due east in the alley, the witness was ordered to stop and hand over his money, which he did. At the robber's direction, Fenstermacher then drove to the intersection of the alley and Coles avenue, one block east of Exchange avenue. The robber stepped out, threw his straw hat into the truck and told the witness to turn left and go north on Coles avenue.

Fenstermacher testified that he was unable to get a good look at the robber while he was inside the truck, but observed he was wearing dark trousers, a blue lumber jacket and a light straw hat. However, as he turned left on Coles avenue, the witness stopped his truck, looked back, and saw the robber standing at the place he had stepped out from the milk wagon. When the robber made a gesture toward his pocket, the witness started his truck and went as far as Seventy-fifth Place, where he turned around and came back on Coles avenue. He saw the robber approximately a sixth of a block down the alley, and drove toward him, yelling to attract attention. The robber ran into a back yard which fronted on Seventy-sixth street. The witness immediately drove on around to Seventy-sixth street and again saw the robber about the place where he could come through from the alley. The robber went back toward the alley and disappeared. Fenstermacher talked to some civilians who had gathered at the intersection of the alley and Coles avenue. He testified he then went a block east to South Shore Drive in search of the robber and saw de-

fendant climbing a fence into a park next to the lake and noticed that he had removed his blue jacket. On his return to Coles avenue, the witness met three police officers in a squad car and described the robber to them as having dark hair and beard, wearing dark trousers and a light faded shirt, hatless and without a jacket. A few minutes later the officers brought the defendant to Fenstermacher, who identified him as the robber, after Cullotta had been asked to step outside the squad car. Later the same evening, at a "show up" in the police station, Fenstermacher again identified the defendant as the person who held him up.

Thomas F. Walsh testified he was one of the police officers in the squad car who talked to Fenstermacher just after the robbery. After the conversation he proceeded from Seventy-sixth to Seventy-ninth street, running along the bushes and shrubbery in the park known as Rainbow Beach, which is about a half block from the lake. He boarded a street car standing at the end of Seventy-ninth street, found the defendant therein and arrested him. He testified that approximately thirty people were on the car and that defendant was in his shirt sleeves without hat or coat, although the temperature was around fifty degrees; and that the defendant was breathing and panting heavily and wiping perspiration from his face with his handkerchief.

At the time of the arrest, Cullotta had $74 in his wallet in bills of various denominations and $2.19 in coins. He was on parole under a former conviction for armed robbery, and had been out of employment two or three weeks. He told Walsh he was going to make a payment on his car, a 1940 Buick sedan, which he said was at home in the garage. Walsh testified the car was found parked on the west side of Coles avenue, between the north side of Seventy-sixth street and the alley where the robbery took place. The car had been left unlocked with the keys in the ignition. The witness further testified the defendant said his hat size was 6⅞; that the straw hat which had been thrown into

the truck and turned over to the police was of a like size and fitted the defendant.

Ruth Golden Brehm lived in a house which fronts Coles avenue and runs west along the north side of the alley where the robbery occurred. She testified that she saw a man running west in the alley about the time of the robbery; that he turned south into a yard west of the house; that this man was not the defendant; that one or two minutes later she saw the defendant running west in the alley; that when he got to her back gate he stopped, looked around about three minutes as if looking for somebody and started east in the alley; that when Fenstermacher's truck came down the alley, defendant again ran west and ran into the same yard as the first man; that when he stood at the gate he was about ten to fifteen feet away from her and had on a heavy bluish jacket; and that when the police later brought him to her home he did not have on the jacket, and at that time she identified the defendant as the man she saw standing at her gate. She recognized his wavy hair and dark trousers. She identified him again at the trial. A jacket corresponding with the description of the jacket which Mrs. Brehm testified defendant wore was found the next day under some bushes in a yard on the opposite side of the street where Fenstermacher testified he last saw the defendant going over a fence into the beach park. Fenstermacher testified the jacket was the one worn by the robber.

The defendant testified he never wears a hat; that on the afternoon of the robbery he remained in the neighborhood of his home at 1013 North Franklin until three o'clock; that he then decided to have his car, which he had recently acquired, checked at the garage; that while on his way to the garage, he remembered a construction project and the steel mills on Seventy-ninth street and decided to call and see if he could get work at either place, and that he drove past the garage and stopped his car on

Coles avenue, where it was later found, because "they would be wondering what I was doing looking for a job with a big car like that." The defendant stated he did not recall exactly where he parked his car, but that he got out of it and rode a street car to Seventy-ninth street; that by the time he reached his destination, he decided it was too late to ask for work and walked out on the beach at the end of Seventy-ninth street. He said he asked some laborers about work and learned from them no employment was to be had, but that he remained on the beach approximately two or three hours until about 6:00 o'clock when he decided it was time to go home; that as he started from the beach, he saw a street car standing at the end of the line, ran half a block across the beach through the sand, boarded the car and was arrested shortly thereafter. He testified that Fenstermacher and Mrs. Brehm did not identify him when they first saw him after his arrest, and that the latter did not identify him before seeing him at the police station. He also denied committing the robbery and being in the neighborhood where it occurred. He admitted he left the keys in his parked car, but said he was in the habit of so doing. He denied any knowledge of pursuit before being apprehended and stated he intended to take the street car to his parked automobile which he figured was about a mile away but which, in fact, was only four blocks. His story does not comport with his testimony that he decided it was too late to look for work, or with his sweaty, panting condition when he was arrested hatless and coatless about four blocks from the scene of the crime very shortly thereafter, with the temperature at fifty degrees. No witness was produced as to his presence on the beach at any time during the hours he claims he was there and talked with laborers about employment. The location of his car near the crime, and his testimony that he intended to go to the garage to have the car checked does not agree with his statement to Walsh that the car

was at home and that he was going to the garage to make a payment on it.

No firearm was found on the defendant and none was produced on the hearing. The trial judge found Cullotta guilty of robbery unarmed because the evidence did not support the charge that the defendant was armed with a pistol. Fenstermacher positively identified the defendant as the robber. Shortly thereafter, Mrs. Brehm saw him in the alley from a distance of only ten or fifteen feet and her identification of him is equally positive. It was daylight. While Fenstermacher was unable to see the intruder clearly when he first entered the truck, he had ample opportunity to observe the robber immediately after he had stepped out of the truck. At that time the witness drove across the street, he looked back and saw the man who had just held him up. He also had opportunity to observe the fleeing robber three times thereafter. Fenstermacher identified Cullotta as the robber when the officers returned with him in the squad car, in the felony court and at the trial below. Defendant contends Fenstermacher did not identify him as the criminal in the squad car. Fenstermacher explained that he could not see the defendant inside the car, but after Cullotta stepped outside, the witness immediately identified him. We have repeatedly held that a positive identification by one witness who has ample opportunity for observation is sufficient to sustain a conviction. (*People* v. *Gerdy*, 362 Ill. 130; *People* v. *Sesto*, 364 id. 38; *People* v. *LeMar*, 358 id. 58; *People* v. *Fortino*, 356 id. 415.) In this case, the identification by Fenstermacher is largely supported by that of the witness Brehm. The trial judge had full opportunity to observe the witnesses while testifying and is in a better position to weigh their testimony than is a reviewing court. Where there is no jury, the law has committed to the court the determination of the credibility of the witnesses and the weight to be accorded their testimony. This court will not substitute its judgment for that of the

trial court where the evidence is merely conflicting. *People* v. *Martishuis,* 361 Ill. 178; *People* v. *Cohen,* 363 id. 303; *People* v. *Bolger,* 359 id. 58.

Defendant urges that the trial judge indicated he felt the People's evidence was weak and based his finding of guilt principally upon the "silliness" of defendant's testimony, and that, therefore, his motion for a directed verdict of not guilty was improperly denied. The evidence for the People was sufficient to sustain the conviction without basing it upon the improbability of defendant's testimony.

The judgment of the criminal court of Cook county is affirmed.
 *Judgment affirmed.*