THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY KILGORE, Defendant-Appellant.

(No. 58141;

First District (4th Division)—November 7, 1973.

*Rehearing denied December 4, 1973.*

DIERINGER, J., dissenting.

Edward M. Genson, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Kurt P. Klein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant-appellant, Larry Kilgore, was jointly indicted with Ricky Smith, Henry Horton, and Norvell Ealey for the murder of Michael

Causher. At the close of defendants' evidence, motions for directed verdicts of not guilty were granted to all except Larry Kilgore. The jury found Kilgore guilty, and he was sentenced to the penitentiary for a term of not less than 15 nor more than 30 years. On appeal, Kilgore presents several issues for review but the only one that we find it necessary to discuss is whether the defendant's guilt was proved beyond a reasonable doubt.

Michael Causher was shot on May 17, 1969, at approximately 9:30 P.M. in front of the Royal Laundromat at 5056 South Cottage Grove Avenue in Chicago. It was stipulated that Causher died as a result of a gunshot wound to the head. On June 10, 1969, defendant Larry Kilgore was arrested and charged with the murder of Causher.

The testimony of witnesses concerning the identity of the person who shot Michael Causher may be summarized as follows:

*Michael Woodson,* 17 years old, is a former member of a gang called the Disciples. He testified that earlier on the night of May 17, 1969, he had been drinking vodka with several of his friends, including the victim, Michael Causher. At approximately 9:00 or 9:30 P.M., Woodson was sitting in Ward's Restaurant at 51st Street and Cottage Grove with Causher and Leon Ligon. While Woodson remained inside, Ligon and Causher went outside. Soon afterwards, Woodson heard two shots and Ligon burst back into the restaurant and said that Causher had just been shot. As Woodson emerged from the restaurant, he saw a tan Ford Falcon with a Black P Stone emblem going east on 51st Street towards Drexel Avenue. Woodson testified that he also saw a tall, husky man with a bush haircut, whom he first observed from a distance of almost one block, running east on 51st Street. Woodson could not identify the man he saw run nor the occupants of the car.

*Officer Floyd W. Peterson,* called as a rebuttal witness by Kilgore, testified that he interviewed Woodson shortly after the killing and that Woodson did not mention a tall, heavy man running down 51st Street at that time.

*Leon Ligon* testified for the People that at approximately 9:00 or 9:30 P.M. on May 17, 1969, he was sitting in Ward's Restaurant. He heard two shots, glanced up, and saw through the restaurant window a man running across Cottage Grove. The witness described the man as approximately six feet tall, heavily built, Negro, wearing a natural haircut and dark clothing. Ligon testified that he could not identify the person he saw running away.

*Michael King* testified that he was in a liquor store at 51st Street and Cottage Grove at approximately 9:00 or 9:30 P.M. that evening when a girl came in and told him one of his friends had been shot. King ran

outside and saw a badge in back of a tan Ford Falcon going east on 51st Street. He first observed the car when it was almost one block away. King testified that he did not see anyone running down 51st Street and that he could not identify the occupants of the car.

*James Edwards* testified that he saw the entire incident and that the shooting occurred between 8:00 and 9:30 P.M. on May 17, 1969. Edwards stated that he was standing about 10 or 15 feet from the victim when the shots were fired. Shortly before the shooting, Edwards saw a brown Falcon station wagon with five occupants drive up on the opposite side of Cottage Grove. He said the four defendants were in the car but that he did not know the identity of the fifth occupant. According to Edwards, Norvell Ealey jumped out of the car, ran across the street, yelled "Blackstone" and fired two shots from the gun in his hand. Michael Causher fell, and Ealey ran east on 51st Street with the automobile following. The car then caught up with Ealey and he got in. Edwards further testified that, several days after the shooting, Kilgore told him: "We got 'Jay Hawk' [*i.e.* Michael Causher] and the same thing that happened to him will happen to you."

On cross-examination, Edwards testified that he, Causher, Leon Ligon and Michael Woodson were all members of a rival street gang called the Disciples on May 17, 1969. Edwards described Ealey, the man he saw run away after the shooting, as being five feet seven or eight, slender, dark complected and about 18 or 19 years old.

*Edward Levy* testified that at approximately 9:30 P.M. on May 17, 1969, he was walking west on the south side of 51st Street between Cottage Grove and Drexel Avenue. He heard two gunshots and observed a tall, heavy Negro man with a natural haircut running east on the opposite side of 51st Street. Levy identified that man as defendant Kilgore. Levy testified that it was dark and the man was "a good way from him," but that he saw the man tuck a gun in his coat. Levy first testified that the man turned north at Drexel, later he said that the man turned south at Drexel, and finally he stated that he did not see in which direction the man turned at Drexel. Levy saw neither a car nor a slender man going east on 51st Street.

*Yvette Winchester* was walking with Levy when the incident occurred. She testified that she heard two shots then glanced briefly across the street and saw someone with a husky build and a bush haircut running between Cottage Grove and Drexel. She testified that she could not identify the man and "couldn't really tell" whether or not he was a Negro. Miss Winchester stated that she is near-sighted and cannot see anything far away.

*Juanita Campbell,* an attendant at the Royal Laundromat for the

past five years, testified for the defendant, Kilgore. She stated that she closed the laundromat between 8:45 and 9:15 P.M. on May 17, 1969. As she was leaving, she saw Michael Causher and another young man she didn't recognize standing near the front of the laundromat. Mrs. Campbell testified that when she reached the alley a few feet north of the laundromat, she heard two shots, turned around and saw a man put something in his belt, walk across the street, get into a car and drive off. Mrs. Campbell testified that Larry Kilgore, whom she already knew from seeing around the laundromat, *was not the man* she saw get in the car; the man she saw was much older, much stouter, and shorter than Kilgore.

Alibi witnesses testified on behalf of all four defendants. Several witnesses testified that defendants Ricky Smith and Henry Horton were at a dance at the YMCA located at 53rd Street and Dorchester when the shooting occurred. The sister and mother of Norvell Ealey testified that he was at home watching television at the time of the incident. Officer Stuart Bradshaw testified that he saw Kilgore and four or five other young men standing in front of a barbecue place located at 47th and Ingleside at approximately 10:00 P.M. on May 17, 1969. Larry Kilgore testified that he was in an apartment at 4701 Ingleside with his girl, Carrie Brown, on May 17, 1969, until 9:30 P.M. and that he went downstairs to the barbecue house between 9:30 and 10:00 P.M. Kilgore also denied threatening Edwards and stated that it was Edwards who had told him several days after the incident to "start digging your grave" next to Causher's.

At the close of defendants' evidence, the court directed verdicts of not guilty for Ealey, Horton and Smith and instructed counsel to make no comment to the jury suggesting their discharge. After deliberating for six hours, the jury found Kilgore guilty of murder.

Kilgore contends, *inter alia,* that he was not proved guilty beyond a reasonable doubt. He argues that prejudicial in-court identification without lineup was unconstitutionally obtained and that blatantly contradictory eyewitness accounts were insufficient to support his conviction.

Kilgore's identification as Causher's killer was based largely on the fact that he fitted the description of a man several witnesses saw run away from the scene. Michael Woodson, Leon Ligon, and Yvette Winchester testified that they saw a "tall, husky man with a natural and wearing dark clothing" run east on 51st Street shortly after they heard two shots.

We note, first of all, that the observation conditions that existed on the night in question were less than ideal since it was dark and all of the witnesses were some distance away from the man when they first

observed him. Miss Winchester, who was across the street from the man when she saw him, testified that she was near-sighted, could not see anything far away, and could not tell whether or not the man she saw was a Negro. The testimony of Woodson and Ligon, both members of a rival gang, was inconsistent with respect to where Ligon was situated during the events in question: Woodson testified that Ligon was outside the restaurant with Causher when the shooting occurred, but Ligon stated that he remained in the restaurant until after the shots were fired, then glanced through the restaurant window and saw a tall, husky man run away. Moreover, Woodson failed to mention seeing a man run away when he was first questioned by police investigating Causher's murder.

More significant than these inconsistencies is the fact that there were three entirely different descriptions of the man seen fleeing the scene of the crime. That man was described by various witnesses as: (1) six feet tall, heavily built and wearing a natural haircut; (2) short and stocky; and (3) five feet seven or eight, slender, and dark complected. These discrepancies are material conflicts in the identification evidence against Kilgore that cannot be reconciled. The role of a reviewing court under such circumstances was succinctly set forth in *People v. Coulson* (1958), 13 Ill.2d 290, 295-6, 149 N.E.2d 96:

> "* * * [I]t is the duty of a jury, or of a court sitting without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and on review, this court will not substitute its judgment for that of the jury or trial court. (*People v. Tensley*, 3 Ill.2d 615; *People v. Kirilenko*, 1 Ill.2d 90.) But it is always the duty of this court to examine the evidence in a criminal case, and if it so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed. (*People v. Williams*, 414 Ill. 414; *People v. O'Connor*, 412 Ill. 304; *People v. Buchholz*, 363 Ill. 270; *People v. Fontana*, 356 Ill. 461.) A judgment of contradiction can be sustained only on credible evidence which removes all reasonable doubt of the guilt of the defendant, and it is the insufficiency of the People's evidence which creates such doubt. If a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case. (*People v. Widmayer*, 402 Ill. 143; *People v. Cullotta*, 376 Ill. 333; *People v. Washington*, 327 Ill. 152.) The foregoing principle of law is a corollary of the presumption of innocence to which a defendant in a criminal case is entitled, and to the rule that the People have the burden of establishing the defendant's guilt beyond a reasonable doubt."

Similarly, in *People v. Gardner* (1966), 35 Ill.2d 564, 571, 221 N.E.2d 232, 236, Justice Schaefer wrote:

> "* * * 'In a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused. * * * And while the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet, where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of conviction will not be permitted to stand. (*People v. Ricili*, 400 Ill. 309; *People v. Gold*, 361 Ill. 23.) Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. (*People v. Fiorita*, 339 Ill. 78; *People v. Kidd*, 410 Ill. 271.) * * *.'"

The only positive identification that Kilgore was the tall, husky man seen running away was provided by Edward Levy, who did not see the actual shooting. Levy's testimony was contradicted by the sole eyewitness to the shooting, James Edwards, who identified Causher's killer as Ealey, and by defense witness Juanita Campbell, who testified that the man she saw definitely was not Kilgore.

■■ The State contends that Levy's identification of Kilgore alone was sufficient to support his conviction based upon the well-established rule that the testimony of a single eyewitness, if it is positive and the witness is credible, is sufficient for a conviction. (*People v. Tribbett* (1968), 41 Ill.2d 267, 242 N.E.2d 249; *People v. Holt* (1970), 124 Ill.App. 2d 198, 260 N.E.2d 291.) Levy did not say he saw the shooting but said he heard shots and saw the defendant running away. The single eyewitness to the shooting was James Edwards, and he testified unequivocally that the man he saw fire two shots at Causher was Ealey. However, where a conviction of murder is sought upon circumstantial evidence alone, the guilt of accused must be so thoroughly established as to exclude every other hypothesis. (*People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485.) The codefendants were all found "not guilty" by the court, therefore the conviction of Kilgore cannot stand under the theory of accountability.

After a careful review of the testimony, we cannot disregard the evidence of alibi. *People v. Peck* (1934), 358 Ill. 642, 193 N.E. 609; *People v. De Suno* (1933), 354 Ill. 387, 188 N.E. 466; *People v. McGee* (1961), 21 Ill.2d 440, 173 N.E.2d 434.

■■ We find that the identification testimony of Levy was "not of that clear and convincing quality required to sustain a conviction," (*People*

*v. Coulson* (1958), 13 Ill.2d 290, 149 N.E.2d 96). Since the State failed to introduce sufficient additional evidence connecting defendant with the crime, we find that he was not proven guilty beyond a reasonable doubt.

As we have concluded that the evidence produced by the State did not support defendant's conviction, it is unnecessary to discuss defendant's other contentions.

The judgment is reversed.

Reversed.

BURMAN, P. J., concurs.

Mr. JUSTICE DIERINGER dissenting:

I respectfully dissent to the majority opinion because I think the fact question involved was properly submitted to the jury by a learned and experienced trial judge. The trial judge showed his fairness and courage when he directed a verdict at the close of the evidence for three of the defendants and properly withheld this action from the jury to avoid any prejudice to the defendant, Larry Kilgore. The trial judge and the jury had heard the testimony of the witnesses, saw their demeanor and their actions on the stand, and had a much better opportunity to decide the fact issue than this court has. I think in this case it was a question of fact to be decided by the jury, and we should not substitute our judgment for that of the jury.

I would affirm the jury verdict and the judgment entered by the Circuit Court.